### ELISHA JENKS *vs.* JOHN WARD & others.

A description of land, in the levy of an execution thereon, by a reference to a deed thereof, which is on record, is sufficient, although the levy does not state that it is on record.

In the levy of an execution on land, appraisers may deduct from the appraised value the incumbrance of the inchoate right of the judgment debtor's wife to dower; and the omission of the appraisers in their certificate, and of the officer in his return, to mention such deduction, will not vitiate the levy.

Where fifty acres of land were conveyed on condition that the grantee should pay a mortgage made by the grantor on ten acres thereof, and on other land of the grantor, it was held that, in extending an execution against the grantee on the fifty acres, the appraisers might deduct from the value thereof the whole mortgage debt of the grantor, although such deduction was greater than the value of the ten acres that were subject to the mortgage.

In extending an execution on land that is subject to a mortgage, appraisers may deduct all the interest which the judgment debtor is liable to pay on the mortgage

debt, although part of such interest has been paid to the mortgagee by a third person, at the request of the judgment debtor's assignees under the insolvent law, but not at the request or with the consent of such debtor

WRIT OF ENTRY to recover a parcel of land in Adams. The demandant claimed title under a levy of an execution against Caleb B. Turner and Wells Laflin, who were acknowledged by both parties to have been the former owners of the land. The tenants claimed title under a previous levy of an execution against the same owners. The validity of the tenants' levy was denied by the demandant ; and as the decision of the case turned on this point, the other points, which were made and discussed, are here omitted.

The appraisers, appointed by the officer who held the tenants' execution aforesaid, made and signed the following certificate thereon : " October 12, 1838 ; We, having been chosen to appraise such real estate as should be shown to us as the property of the within named Turner and Laflin, or either of them, to satisfy this execution, and having viewed the following described premises, have appraised the same at $ 10,225·33, from which sum is to be deducted the sum of $ 742, half the amount of a mortgage on a portion of the same to the Life Insurance Company, on that portion that the said Caleb B. Turner purchased of David Estes, hereinafter described ; leaving to apply on this execution the sum of $ 9,483·33 ; which premises we have appraised to the said John Ward and sons, at said last mentioned sum, and described in manner following, namely : One undivided half, being the interest of said Caleb B. in the place where he now lives, which formerly belonged to Benjamin Sibley, and known as the Sibley place, consisting of house, barn, &c., bounded on the west by the road from No:th Village to Clarksburgh ; on the south by the Union Road. Also one other piece, being the same which the said Caleb B bought of David Estes, by deed of March 24th 1828. Also one other piece, being the same the said Caleb B. bought of Benjamin Sibley, by deed of March 31st 1834. Also one other piece, being the same the said Turner bought of Richard P. Hart and Theodore F. French, by deed of 10th December, 1821

Also one other piece bought of Gideon Mixter, February 14th 1827. Also one other piece bought of Isaac Brown, October 20th 1821. Also one other piece bought of Giles Tinker and William E. Brayton, by deed of December 19th 1821. Also one other piece bought of James Cumings, by deed of September 24th 1833. Also a piece bought of Benjamin and James Hathaway, by deed of January 6th 1831. Also a piece bought of Josiah Nichols and Robert W. Smith, by deed of May 2d 1835. Also a piece bought of Christopher French, by deed of January 15th 1822. Also a piece bought of Israel Jones, December 2d 1825. Also a house and lot on the west side of the road leading from said village to Clarksburgh, containing about twenty-five square rods of land, and the same described in the deed from Benjamin Sibley to Orin Witherell, of February 25th 1817 ; reference to be had to said deed for a more full and particular description. Also all the interest of said Turner and Laflin in a piece of land which they purchased of Willard Gould jointly, by deed of March 27th 1833. Also the whole interest of said Turner and Laflin in the Clarksburgh farm and reservoy, so called, being two fifteenths, bought of Daniel Aldrich, by deed of 30th of March 1836. *The foregoing pieces of land*, with the exception of the Clarksburgh farm and the house and lot, before mentioned, on the north side of the road, *adjoin each other and lie in a body, and are known as the Print Works Ground*, on which the print works now stand, as well as the Eagle Factory, the dwelling connected with said factory, &c., the brick store, brick furnace, brick office, machine shop, satinet factory, &c., &c., bounded on the west, northwest, and north, by the old road leading from North Adams Village, Main Street, to Stamford ; excepting from the foregoing a small lot sold off to Isaac Hodges, by deed of September 24th 1834, and a small lot to James Hatch and John Marion, by deed of June 1st 1832."

The return of the officer, who held the tenants' said execution, stated that he had, by virtue thereof, seized " all the estate above described, and caused the same to be appraised and set off," as in the appraisers' certificate set forth, and had delivered

seizin and possession of the same to the judgment creditors' attorney of record.

The demandant objected to this levy: 1st. Because the description of the land was not sufficient, it being, as to part of it, by reference to deeds only. 2d. Because the appraisers deducted, in fact, $656 for dower, which the wives of the judgment debtors might claim in the land, such deduction not being mentioned in their certificate, nor in the officer's return. 3d. Because the appraisers, instead of deducting a mortgage debt from the estimated value of the whole of the premises mortgaged, deducted it from an entire parcel of land, a small portion only of which was covered by the mortgage deed; the amount thus deducted exceeding, by several hundred dollars, the value of the mortgaged portion. 4th. Because the appraisers computed and added more interest to said mortgage debt than was due thereon.

It appeared at the trial before *Dewey*, J. that the mortgage, mentioned in the demandant's third and fourth objections to the tenants' levy, was made by David Estes to the Hospital Life Insurance Company, to secure payment of $1400 and interest, and embraced about ten acres of the land included in the levy, which were worth about $300 at the time of the levy, and also embraced other parcels of land worth six or seven thousand dollars, which parcels, at the time of the levy, were owned by said Estes and by several individuals, who were his grantees. It also appeared that interest was paid on said mortgage, by Evenal Estes, up to January 6th 1838, at the request of the assignees (under the insolvent law) of said Turner and Laflin, and not at the request of David Estes, the mortgagor; and that the appraisers did not deduct the interest thus paid at the request of said assignees.

The tenants introduced evidence tending to show that David Estes, when he made the aforesaid mortgage to the Hospital Life Insurance Company, was the owner of the land mortgaged by him, and that he subsequently conveyed about 50 acres of land to Caleb B. Turner, one of the judgment debtors aforesaid, about ten acres of which was of the said mortgaged land; that

the deed from said Estes to said Turner, (which was not pro-
duced at the trial,) was upon condition that said Turner should
pay said mortgage ; that the consideration of said deed was
$ 2200, and that the mortgage of $ 1400 was part payment,
and that Turner gave his notes to said Estes for the balance ;
that said deed was given 14 or 15 years ago ; that said Turner
thereupon went into possession of said fifty acres ; paid the in-
terest on said mortgage, yearly, until the time of his failure in
1837 ; erected expensive buildings on the land for a calico print
manufactory ; sold an undivided half of the print works' property
to Abner Perry, and took his bond to pay one half of said
mortgage to the Life Insurance Company.

It was also shown or admitted, that the aforesaid 50 acres
were all included in the tenants' levy ; and that all the deeds,
referred to in the certificate of the appraisers, were on record
at the time of the levy, except that from David Estes to Caleb
B. Turner ; and that deeds were then also on record of the
lands, said in the levy to have been bought of Gideon Mixter,
of Isaac Brown, and of Israel Jones.

The case was taken from the jury, on an agreement of the
parties that if the above exceptions to the tenants' levy were
well taken — assuming that the demandant's levy was good in
form and substance, and that he could prove by parol evidence,
if permitted, the second objection above made by him to the
tenants' levy — then judgment should be rendered for the de-
mandant, unless the foregoing evidence, as to the said mortgage
and the deed from David Estes to Caleb B. Turner, would, in
the opinion of the court, authorize a verdict for the tenants ; in
which case, the action should be submitted to a jury.

*Bishop & Byington*, for the demandant. 1. The lands are
not sufficiently described in the tenants' levy. *Eells* v. *Day*,
4 Connect. 96. The reference, in the return, is not to records
of deeds, as it was in *Boylston* v. *Carver*, 11 Mass. 515, but
only to deeds. Some of the pieces are described only by the
name of the person of whom they were purchased on a certain
day, without even the mention of a deed. The general descrip
tion, at the conclusion, is insufficient, as it gives the boundaries

onl} on the west, northwest, and north.  It is also entirely un-
certain, from the return, whether the whole or one half only of
all the pieces, except that which is first mentioned, was set off
to the tenants.

2. The deduction which was made for dower, if it could
properly be made, should have been specified in the return
Rev. Sts. *c.* 73, § 8.    *Carpenter* v. *Sutton*, 7 Pick. 52.    But
the wife's inchoate right of dower is not a proper subject of de-
duction ; it being as contingent and uncertain as the right acquir-
ed by attachment, which has been held not to be a subject of
deduction.   *Barnard* v. *Fisher*, 7 Mass. 71.

3. The deduction of half the amount of the mortgage made
by D. Estes, being taken from a small parcel only of the land
levied on, was unwarranted.   The provision in the Rev. Sts.
*c.* 73, § 31, for the deduction of the value of incumbrances,
and the amount of mortgage debts, applies only to cases in which
the whole land mortgaged or incumbered belongs to the same
person.   Part of an equity of redemption cannot be taken on one
execution, and part on another ; for in such case, the judgment
debtor cannot know the value of his remaining equity.   See
*Warren* v. *Childs*, 11 Mass. 222.   If Turner & Laflin would
have redeemed the estate levied on, they must have paid the
whole sum for which it was set off, and must therefore have re-
deemed for the benefit of other mortgagors.   See *Fletcher* v.
*Stone*, 3 Pick. 250.   The deduction should have been made
only from the land mortgaged, and for such proportion of the
judgment debtors' land as was mortgaged.

4. The amount deducted exceeded the value of the mort-
gaged portion of the lands owned by the debtors, and therefore
such deduction vitiated the levy.   There was no equity of re-
demption, on which a levy could legally be made.   *Root* v.
*Colton*, 1 Met. 345.   *Pickett* v. *Breckenridge*, 22 Pick. 297.
*Holbrook* v. *Burt*, 22 Pick. 546.

5. The computing of more interest on the mortgage than was
due also vitiated the levy.   *Cases last cited.*

The evidence introduced by the tenants, if admissible, leaves
most of the objections to the levy wholly unanswered.

*Robinson & Rockwell*, for the tenants. 1. The Rev. Sts *c.* 73, § 5, authorize a levy by such a description of the land as is necessary or proper in a common conveyance. The description in the tenants' levy would be sufficient in a deed. The reference to the various deeds is sufficient. *Boylston* v. *Carrer*, 11 Mass. 515. *Maeck* v. *Sinclear*, 10 Verm. 103. In the latter case it is true that the levy itself described the deeds as of record ; but it is not certain from the report of the former, that it was so there. And the principle which applies to the one case is applicable to the other ; viz. *id certum est, &c. Galusha* v. *Sinclear*, 3 Verm. 395, 399. Even the reference to *land bought* of Mixter, Brown and Jones, is sufficient, as there are in fact corresponding deeds. *Gilman* v. *Thompson*, 11 Verm. 643, 649. But however this may be, the general description of the whole, as lying together, and known as the Print Works, &c. is unexceptionable. *Worthington* v. *Hylyer*, 4 Mass. 205. *Buck* v. *Hardy*, 6 Greenl. 162. *Hedge* v. *Drew*, 12 Pick. 141. *Morse* v. *Dewey*, 3 N. Hamp. 535.

2. Appraisers may and should always estimate the value of land subject to the contingent right to dower. *Sturdivant* v. *Sweetsir*, 3 Fairf. 520. But no statute or rule of law requires the fact, in such case, to be noticed in the return ; and if it were set out in the return, the court could not correct the appaisers' proceedings. This objection to the levy is not fairly before the court. It arises from parol evidence only, and is in the nature of a contradiction of the return. *Waterhouse* v. *Gibson*, 4 Greenl. 230. The case cited from 7 Mass. 71; is wholly unlike this. There the levying creditor might have waited without any loss or risk, until the other attaching creditor had recovered judgment, or failed in his suit. But in the case at bar, there is no such way of avoiding the incumbrance of an inchoate right to dower.

3. 4. The Rev. Sts. *c.* 73, § 31. do not, as the demandant's counsel seem to assume, provide *merely* for the case of a mortgage, but also for other incumbrances. " The appraisers shall deduct the value of the incumbrance, or the amount of the mortgage debt." If the 50 acres were conveyed to Turner, subject to a

condition that the mortgage, which was on 10 of those acres and on other land, should be paid by him, then there was an incumbrance on the whole 50 acres, and the value of it was rightly deducted. If no deed of the 50 acres was made to Turner, then the levy was on land not of the judgment debtors, and the demandant cannot disturb the levy, unless he can show affirmatively that the deduction was made from other land than those 50 acres. *Kelleran* v. *Brown*, 4 Mass. 444. *Erskine* v. *Townsend*, 2 Mass. 497. 4 Kent Com. (3d ed.) 120, 122. *Stewart* v. *Hutchins*, 13 Wend. 485. *Allen* v. *Clark*, 17 Pick. 47.

5. No more interest was allowed on the mortgage than was due. Payment by the assignees of Turner & Laflin was unauthorized. Turner was bound to pay it, and it was due from him.

WILDE, J. This case depends on the validity of the tenants' title, which is derived from the levy of an execution upon the demanded premises, against Turner & Laflin, the former owners, it being admitted that if this levy was made according to law, the tenants have the elder and better title.

The first objection to the levy is, that the description of the land taken is not sufficient, it being by reference to certain deeds, which were on record, and not to metes and bounds. The statute does not require that land levied upon should be described in every case by metes and bounds. The provision is, that it " shall be described by metes and bounds, *or otherwise*, with as much precision as is necessary or proper in any common conveyance of land, and in such manner that the premises may be known and identified." Rev. Sts. c. 73, § 5. In *Boylston* v. *Carver*, 11 Mass. 515, it was decided that the description of land levied upon, by reference " to deeds of the same land upon record," was a sufficient description : And we can have no doubt of the correctness of that decision. Whether it appeared from the levy itself, in that case, and in *Galusha* v. *Sinclear*, that the deeds referred to were on record, is not certain from the reports.* But we are of opinion, that if it did so

---

* It is found, on inspection of the record, in the case of *Boylston* v. *Carver*, that the levy, on which the demandant relied, did describe the land as " butted

appear, yet there is no distinction between that case and this In the case at bar, reference was made, in the levy, to deeds that were in fact on record, and the principle of the decision is the same in this case as in that, viz. that is certain, which can be made so.

The second objection is, that the appraisers deducted from the appraised value of the premises a certain sum for the incumbrance of the rights of dower of the wives of the judgment debtors without mentioning such deduction in the certificate of appraisement. This objection also does not appear to be well founded The appraisers had a right to make such deduction ; an inchoate right of dower being an incumbrance, as was decided in *Shearer* v. *Ranger*, 22 Pick. 447. And the omission to certify the deduction is not such a defect in the proceedings as would vitiate the extent. The defect, if it be one, is merely formal ; and parol evidence is not admissible to impeach the certificate of the appraisers, or the return of the officer, when in fact the appraisement was fairly made.

Another objection to the levy relates to the deduction of an incumbrance, by mortgage, on a small proportion of the land taken on execution, and which included other lands of great value. The objection is, that only a portion of the amount due on this mortgage ought to have been deducted. But we think the whole amount was rightly deducted, because Turner was bound to pay off this mortgage, and consequently he could have no right to claim contribution from the owner of the other lands mortgaged. It is said that the portion of the premises included in the mortgage ought not to have been taken on execution, because the amount due on the mortgage much exceeded the estimated and real value of that portion of the premises, and consequently there was no necessity of including that portion in the levy. But whether there were any such necessity or not, we think the judgment creditor had a right to take this portion of the debtor's property, as well as his other property — what-

and bounded as is specially described in a deed from Jonathan Bullard to Moses Gill, dated October 31, 1787, and recorded in Middlesex records, Book 96, p. 622, as by reference thereto will appear."

ever may have been his title or the incumbrance. But it appears that there was evidence, that the whole fifty acres were conveyed by Estes to Turner, on condition that Turner should pay the said mortgage.

It was argued by the demandant's counsel, that this was not such an incumbrance as would justify a deduction from the estimated value of the land. We think, however, very clearly, that there is no foundation for this objection. It is true, the conveyance was not a mortgage ; but the condition to be performed by the grantee, for the non-performance of which the estate would be forfeited, was most certainly an incumbrance. And the land was liable to be taken on execution ; for it was the land of the judgment debtor, Turner, subject to the mortgage, in part, and the other part was liable to be defeated only by the non-performance of the condition.

As to the computation of interest, we think no more was computed than Turner was liable to pay. The payment, made at the request of the assignees of Turner and Laflin, was gratuitous, and not at the request or with the consent of either Turner or Laflin.

Upon the whole matter, therefore, we are of opinion that the evidence reported would authorize a verdict for the tenants ; and according to the agreement of the parties, a new trial is granted